NO. 14-1098 (L)

_____

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

ROBERT DONNERT & DAVID DONNERT

Appellees/Cross-Appellants

v.

FELD ENTERTAINMENT, INC.

Appellant/Cross-Appellee

_____

On Appeal from the United States District Court
for the Eastern District of Virginia at Alexandria

_____

OPENING BRIEF OF CROSS-APPELLANTS
ROBERT AND DAVID DONNERT

_____

R. Wayne Pierce
THE PIERCE LAW FIRM, LLC
133 Defense Highway, Suite 106
Annapolis, MD 21401
Phone:  (410) 573-9955

July 24, 2014

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __14-1098__     Caption: __Robert Donnert v. Feld Entertainment, Inc.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Robert and David Donnert__
(name of party/amicus)

who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.   Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.   Does party/amicus have any parent corporations?                              ☐ YES ☑ NO
     If yes, identify all parent corporations, including grandparent and great-grandparent
     corporations:

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
     other publicly held entity?                                                  ☐ YES ☑ NO
     If yes, identify all such owners:

10/28/2013 SCC                          - 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: _R Wayne Pierce_____    Date: ___March 5, 2014____

Counsel for: Appellees_____

## CERTIFICATE OF SERVICE
***************************

I certify that on ___March 5, 2014,___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_R Wayne Pierce_____                   ___March 5, 2014____
(signature)                                         (date)

- 2 -

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ......................................... 2

TABLE OF AUTHORITIES................................................................. 6

JURISDICTIONAL STATEMENT......................................................... 9

STATEMENT OF ISSUES.................................................................. 9

STATEMENT OF CASE.................................................................... 10

STATEMENT OF FACTS ................................................................. 11

SUMMARY OF ARGUMENT ........................................................... 20

ARGUMENT ................................................................................. 22

I. THE DISTRICT COURT ERRED WHEN IT DISMISSED THE
DONNERTS' CAUSE OF ACTION BASED ON THE FLORIDA
STATUTE GOVERNING RETALIATORY PERSONNEL
ACTIONS...................................................................................... 22

II. THE DISTRICT COURT ERRED WHEN IT ENTERED AN
ORDER OF ISSUE PRECLUSION IN THE MISTAKEN BELIEF
THAT THE MAGISTRATE JUDGE HAD ALREADY ORDERED
IT .............................................................................................. 26

III. THE TRIAL COURT PROPERLY DETERMINED THAT
THERE WAS A JURY ISSUE WHETHER FELD LACKED CAUSE
TO TERMINATE THE DONNERTS ............................................... 29

IV. THE DISTRICT COURT PROPERLY FOUND THAT THE
JURY COULD FIND A BREACH OF THE DUTY OF GOOD
FAITH AND FAIR DEALING ......................................................... 37

V. THE DISTRICT COURT PROPERLY INSTRUCTED THE
JURY THAT FELD COULD NOT PREVENT US FROM
PERFORMING THE CONTRACT ................................................... 38

VI. THE DISTRICT COURT PROPERLY FOUND THAT THE
PLAINTIFFS PROVED THEIR DAMAGES ...................................... 39

VII. THE DISTRICT COURT PROPERLY DENIED FELD'S
MOTION FOR NEW TRIAL BASED ON ALLEGEDLY
PREJUDICIAL REMARKS DURING TRIAL .................................... 42

CONCLUSION.............................................................................. 43

**CERTIFICATIONS** ........................................................**45**

# TABLE OF AUTHORITIES

**Page**

## CASES

*Barnes v. Graham Va. Quarries, Inc.*, 204 Va. 414, 418, 132 S.E.2d 395,    40

*Clark v. Scott,* 258 Va. 296, 303, 520 S.E.2d 366, 370 (1999)    40

*Cioca v. Rumsfeld,* 720 F. 3d 505, 508 (4th Cir. 2013)    23

*Dotson v. Pfizer, Inc.,* 558 F.3d 284, 292 (4th Cir. 2009)    30

*Forbes v. Rapp,* 269 Va. 374, 380, 611 S.E.2d 592, 595-96 (2005)    41

*Fried v. Smith*, 224 Va. 355, 357, 421 S.E.2d 437, 438 (1992)    30

*Hitachi Credit Am. Corp. v. Signet Bank,* 166 F.3d 614, 628 (4th Cir. 1999)    25

*Horton v. Horton,* 254 Va. 111, 115-16, 487 S.E.2d 200, 204 (1997)    35

*Kiser v. Amalgamated Clothing Workers,* 169 Va. 574, 588, 194 S.E. 727, 732-33 (1938)    15

*Mackey v. Shalala,* 360 F.3d 463, 469 (4th Cir. 2004)    30

*Pennsylvania State Shopping Plazas, Inc. v. Olive, 202 Va. 862, 120 S.E.2d 372 (1962)*    35

*Restatement (Second) of Conflict of Laws* § 187 (2) (b)    25

*Restatement (Second) of Contracts § 205, comment a (1981)*    35

*Restatement (Second) of Contracts § 205, comment e (1981)*    35

*Stoney Glen, LLC v. Southern Bank & Trust Co.,* 2013 U.S. Dist. Lexis 63763, *15 (E.D. Va. May 2, 2013)    32

*Tymshare, Inc. v. Covell,* 727 F.2d 1145 (D.C. Cir. 1984)    35

*United States v. Zayyad*, 741 F. 3d 452, 459 (4th. Cir. 2014)    37

*Virginia Vermiculite, Ltd. v. W.R. Grace & Co.,* 156 F.3d 535, 542 (4th Cir. 1998)    33, 38

*Ward's Equip., Inc. v. New Holland N. Am., Inc., 254 Va. 379, 493 S.E.2d*    33

*516 (1997)*

*Whitt v. Godwin,* 205 Va. 797, 800, 139 S.E.2d 841, 844 (1965)    36

*Winn v. Aleda Construction Co.*, 227 Va. 304, 307, 315 S.E.2d 195,    30, 31
194-195

## STATUTES

28 U.S.C. § 1332                                              9

28 U.S.C. § 1291                                              9

29 U.S.C. § 660                                             24

29 C.F.R. § 1977.3                                          24

29 C.F.R. § 1977.6 (b)                                      24

29 C.F.R. § 1977.9 (c)                                      24

Florida Statute § 448.101                                   23

Florida Statute § 448.102                                   23

Florida Statute § 448.103                                    23

Florida Statute § 448.104                                    23

## JURISDICTIONAL STATEMENT

The trial court had jurisdiction under 28 U.S.C. §1332 based on diversity of citizenship and an amount in controversy exceeding $75,000. This Court has jurisdiction under 28 U.S.C. §1291. The trial court order was docketed on January 7, 2014, J.A. 19, appeal was filed on February 3, 2014, J.A. 19, and the cross-appeal was filed on February 18, 2014, J.A. 20. This appeal is from a final judgment disposing of all claims.

## STATEMENT OF CROSS-APPEAL ISSUES

1. Whether the District Court erred when it dismissed Count VI and ruled that a contractual choice-of-law clause was sufficient to avoid controlling law governing retaliatory personnel actions under Florida Statute §448.101?

      Raised: J.A. 41, E.D. Va. Doc. #11, at 11-16

      Ruling: J.A. 81, 114-15

2. Whether the District Court erred when it delegated discovery motions to the magistrate judge, then countermanded the magistrate's ruling and precluded introduction of direct contractual damages?

      Raised: J.A. 296-99

      Ruling: J.A. 296-99, 303

## STATEMENT OF CASE

This is an employment case arising out of a wrongful termination. Brothers Robert and David Donnert entered into a written employment contract and lease of their performing circus animals with defendant, Feld Entertainment, Inc.'s circus. While employed in Florida, Feld terminated the Donnerts on the alleged basis that they were probationary employees and could be terminated without cause.

The Donnerts sued their former employer for breach of the employment contract and lease, as well as a Florida statute governing retaliatory personnel actions. On the employer's preliminary motion, the District Court dismissed the count based upon the Florida statute on the basis that the contractual choice-of-law clauses specifying Virginia law were sufficient to avoid a controlling Florida statute.

There was also a discovery dispute. Because the Donnerts travel and live on the road, they were not able to produce certain documents maintained in their Florida home within the time limits specified by the rules of procedure. This prompted a motion to compel, which was delegated to the magistrate judge. The magistrate judge entered an order precluding the Donnerts from introducing documents that were not produced within a deadline. Some months later, Feld filed a motion for sanctions for failing to produce certain

documents, and requested an order precluding the Donnerts from introducing any evidence on damages, whether documentary or otherwise. The magistrate judge denied the request for issue preclusion. Nevertheless, Feld filed a motion *in limine* to preclude introducing evidence of certain damages, which the District Court granted on the basis that the magistrate judge had so ruled.

The case was tried to a jury, which returned a verdict for the Donnerts. The District Court denied Feld's motion for judgment.

## STATEMENT OF FACTS

Brothers Robert and David Donnert are lifelong horse professionals and circus performers. J.A. 324. They trained and performed a juggling act on horseback, as well as a comedy horse act. J.A. 620.

### *The Contracts*

On April 21, 2010, the Donnerts and Feld negotiated an employment contract based on a document drafted by Feld. J.A. 479, 620. In pertinent part, Feld hired the Donnerts to perform their juggling and comedy horse acts for a fixed term of approximately 19 months, J.A. 620, § 1, and agreed to pay them at a fixed rate, J.A. 621, §§ 3 (a) & 4 (a). The contract also included a choice-of-law clause providing

> the parties agree that the Contract and the employment relationship established hereby and all claims and disputes relating thereto shall for

all purposes, be governed by the laws of the Commonwealth of Virginia, including, without limitation, laws relating to workers' compensation.

J.A. 627, § 21.

Concurrently, the Donnerts and Feld also executed a lease that was "coterminous" with the employment contract. J.A. 635, § 1. The lease provided that the Donnerts would provide the horses needed for the juggling and comedy horse acts at a fixed rate. J.A. 639, § 5 (a). The lease also contained a shared-safety clause, providing in pertinent part that

safety is of paramount concern to [employer] as it relates to animals, the public, and [employer's] animal care and other staff, and [employees] will take all necessary steps to ensure such level of safety .... [Employer] agrees to work with [employees] to facilitate compliance.

J.A. 641, § 7 (c). The lease also contained a choice-of-law clause providing that: "This Lease shall be governed by and shall be construed in accordance with the laws of the Commonwealth of Virginia, regardless of its choice of law provisions." J.A. 646, § 18.

Some months later, the parties modified and supplemented the employment contract and lease in advance of the Donnerts moving to another of Feld's circus units. In pertinent part, both contracts were extended by nearly a year, J.A. 649, § 3 & 650, § 11, and the rental amount was increased, J.A. 651, § 15. A probationary clause indicated that the Donnerts would be on probation and could be terminated "without cause and without advance

- 12 -

written notice" during the first 4 weeks of employment with the new circus unit.  J.A. 649, § 6.

### *The Wrongful Termination*

Once the Donnerts transferred to the new circus unit, they resumed rehearsing and training for the new performance.  J.A. 334, 335, 398.  Initially, everything proceeded properly; the comedy horse, Cornbread, performed well; and there were no safety issues.  J.A. 654.

Shortly before Christmas, 2010, Feld elected to change the show order. J.A. 496.  Under the new show order, the comedy horse act immediately followed the tiger act.  J.A. 654.  Cornbread's behavior changed abruptly.  J.A. 345, 402, 654.  Cornbread began exhibiting the classic signs of fear, such as wide-open eyes and standing up prematurely when the horse should have been laying down as part of the performance.  J.A. 402, 403.  This fear was caused by the comedy horse act following immediately after the tiger act. J.A. 353-54, 395. It was driven by the strong scent of predatory tigers in the area and the loud noises associated with dismantling the tiger attraction in the dark.  J.A. 346, 353-54, 415, 556. The Donnerts tried all known techniques to solve the safety issue, but without success. J.A. 445-46.

Cornbread's fear posed a safety issue not only to Cornbread, but handlers, staff, or patrons in the arena.  J.A. 360, 445, 654, 687.  A scared

horse can take off running, slip and injure itself, or knock down others in the area. J.A. 360. In the words of David Donnert, the new show order was an "accident…wait[ing] to be happening." J.A. 360.

Because of their concern for the safety of their animals and others in the area, the Donnerts complained frequently to Feld management for a solution to this safety problem and truly wanted to work it out. J.A. 460, 463-64, 654. Although Feld made an effort to be quieter, this was not successful and Feld did nothing else to try to solve the problem. J.A. 415, 460, 654, 687. This culminated in Cornbread injuring himself on December 28, 2010. J.A. 415, 417, 547. As a result, Robert Donnert sent an e-mail to Feld ownership stating in pertinent part:

> I wanted to let you know that I received the discharge report on Cornbread. I hope your vet staff has let you know the situation. According to the report and with my knowledge as an animal trainer my **1st priority is always the safety and well-being of my animals**. With the **show order the way it is** now **it is not safe** for my comedy horses. During my work career I always do my best to give a first-class performance, and is why I am still striving to do. Please consider my situation what we discussed before because I **spoke frequently with your creative team** during the December winter quarter rehearsals about this but there was **never a solution** to the problem.
> My **horses are afraid of The tiger cage tear down** it makes them nervous and **they will injure themselves**. I hope you will understand the problem that I have and **come up with a solution**…. Please remember in the beginning of rehearsals the comedy act was after the strap act and **we did not have any problems**, 2 weeks before the first public show **the act order was changed and that's when the problems started**…. I look forward to find a way to **fix this problem**.

- 14 -

J.A. 654 (emphasis added).

Despite this e-mail, Feld did not even regard Cornbread's behavior or the show order as a safety problem. J.A. 505, 506. As a result of this e-mail, Feld management called a meeting with the Donnerts. J.A. 519. At the meeting, Feld never even discussed the Donnerts' safety concerns. J.A. 550. Feld proposed that the Donnerts have 2 months of additional training so that the comedy horse act would still follow the tiger act, but unsuccessful re-training would result in the Donnerts being fired. J.A. 359, 460, 467. This was not satisfactory to the Donnerts because they knew re-training alone would not solve the safety problem, and Feld would then fire the Donnerts for cause and they would lose their jobs. J.A. 423. In the alternative, Feld proposed to terminate the comedy horse act and cut the Donnerts' pay by 50%, or to allow the Donnerts to continue performing until such time as they found a new job. J.A. 359-60. None of these options are specified in the parties' employment contract or lease. J.A. 620-646. For their part, the Donnerts proposed bringing in a clown act for a few minutes, but were not trying to change the show order, only maintain safety. J.A. 358, 424, 465-66. Feld refused to negotiate those terms with the Donnerts. J.A. 464, 511. The negotiations at the meeting were ongoing, "inconclusive," and did not produce a definitive

result.  J.A. 358, 541, 561. The Donnerts insisted that they had not refused to perform the comedy horse act. J.A. 439.

After this single, inconclusive meeting, Feld management reported that the Donnerts did not accept any of the 3 options, J.A. 542, and Feld decided to terminate the Donnerts.  J.A. 511, 516-517.  In doing so, Feld made no efforts to investigate the Donnerts' safety concerns, consulted no animal professionals, and did not issue a warning letter.  J.A. 516-17, 520, 549.  The termination letter stated that the Donnerts were fired solely in the belief that they were still probationary employees.  J.A. 568, 655.  As a result, Feld believed that it was not necessary to identify cause for the termination.  J.A. 568-69.  In fact, the Donnerts were no longer probationary employees.  J.A. 569.

*Statutory Action*

The Donnerts sued their former employer for breach of the employment contract and lease, as well as a Florida statute governing retaliatory personnel actions.  J.A. 2.  On Feld's preliminary motion, the District Court dismissed the count based upon the Florida statute on the basis that the contractual choice-of-law clauses specifying Virginia law were sufficient to avoid a controlling Florida statute.  J.A. 81, 114-115.

*Discovery Sanction*

A discovery dispute also developed. Because the Donnerts travel and live on the road, they were not able to produce certain documents maintained in their Florida home within the time limits specified by the rules of procedure. J.A. 98. This prompted a motion to compel, which was delegated to the magistrate judge. J.A. 5. During the motions hearing, Feld's counsel indicated that the real issue was that it just wanted to know whether any more damages documents existed. J.A. 93. The magistrate judge similarly just wanted to know if there were any more documents to be produced, and was not expecting a lot of them. J.A. 97. Eventually, the magistrate judge declared that "there comes a time at which *documents* have to be produced or else you can't rely on them." J.A. 99 (emphasis added). The magistrate judge then set a deadline and stated that the Donnerts "are not going to be able to claim damages for any out-of-pocket expenses *for a veterinary bill or anything else*" that was not produced by the deadline. J.A. 99 (emphasis added).

Some months later, Feld filed a motion for sanctions for failing to produce certain documents, and requested an order precluding the Donnerts from introducing any evidence on damages, whether documentary or otherwise. J.A. 7; E.D. Va. Doc. #48, at 8 (requesting order striking the Donnerts' "damages for loss of future pay and rental expenses and any out-of-pocket expenses"). The magistrate judge re-affirmed the prior order that

documents were to be produced by the specified deadline, and if they were not, then the Donnerts "are not going to be able to offer *documentary evidence* of any such expenses." J.A. 138 (emphasis added). Feld's counsel agreed with that statement. J.A. 138. The magistrate judge then ordered that all papers be produced and reviewed by Donnerts' counsel for possible production. J.A. 155-56. Based on this production, the magistrate judge would then decide whether to impose the sanction of "a prohibition against plaintiff contending…that they have mitigated their damges." J.A. 157.

The hearing on the motion for sanctions resumed several weeks later. During the hearing, Feld's counsel inferred that the Donnerts were intending to introduce *certain documents*, and the magistrate judge interjected: "Not if they weren't produced before May 28th." J.A. 169. The magistrate judge added that "anything that wasn't produced by May 28th may not be relied on." J.A. 169. The magistrate judge extended 2 additional days for the Donnerts to produce documents and then took the motion under advisement. J.A. 180, 183.

Several months later, Feld renewed its motion for sanctions because no ruling had been issued. J.A. 12, 254. At a hearing on November 1, 2013, the magistrate judge queried Feld's counsel why Feld could not defend based upon the documents produced. J.A. 255. The magistrate judge then ordered that any documents related to a specific tax return be produced within 2 business

days, and "if that doesn't happen, then I'm going to ... need to be convinced that I shouldn't award the sanctions that they're asking." J.A. 262. If the *documents* were produced in that time, then Feld "will be in a position to defend at trial and will not be prejudiced." J.A. 269. If the Donnerts did not produce the documents, the magistrate judge was "going to award sanctions that will put defendant in the position that it needs to be in to defend at trial." J.A. 269. The motion would be kept open and on the docket for 6 more days. J.A. 269. The Donnerts produced that information within the specified time. J.A. 304.

Later on the same day of November 1, 2013, and while the motion for sanctions was still pending, Feld filed a motion *in limine* directed to the Donnerts' damages claims which had just been ruled upon by the magistrate judge. J.A. 14. This came on for hearing the day before trial. J.A. 273. The District Court judge attempted to summarize the oral rulings issued by the magistrate judge, stating that the magistrate judge "clarified [at the November 1 hearing] that with regard to out-of-pocket expenses, nothing may be claimed at trial for which a document was not produced before May 28, 2013." J.A. 287. The Donnerts' counsel then pointed out that there were $121,860 of horse maintenance, housing, and feed that were direct damages under the contract, and that there was never any documentation to produce. J.A. 284, 296-98, 302. *See* J.A. 639, § 3 (c) (Feld's responsibility under the lease to provide for

horse maintenance and feed). The District Court then precluded these direct

damages for the sole reason that there was no documentation submitted by

May 28th, in alleged violation of the magistrate judge's orders. J.A. 298, 303

n. 1.

## SUMMARY OF ARGUMENT

This cross-appeal presents 2 versions of the same question: Who

decides? In the state of Florida, the legislature has prohibited as a matter of

public policy various retaliatory personnel actions. Those laws govern actions

taken in Florida. In this case, the parties executed a contract indicating that

Virginia law governs their relationship. The employer then engaged in a

prohibited, retaliatory personnel action while operating and employing the

Donnerts in Florida. So, can employers use their superior bargaining power to

avoid the law of the land and insulate themselves from governing law? Does

the Florida legislature decide the law in Florida, or are private parties free to

evade its reaches? As a matter of public policy, Virginia does not allow private

parties with unequal bargaining power to evade their statutorily-imposed

obligations by contracting them away.

The second issue for the cross-appeal involves who decides discovery

disputes. When a district court delegates a discovery dispute, such as

happened in this case, it is the magistrate judge who decides the appropriate
remedy. In this case, the magistrate judge conducted a hearing and ordered a
cut-off for producing documents, the sanction for which was document
preclusion. The remedy was limited to document preclusion because the goal
was merely to determine whether more documents existed, not whether there
was some unfair advantage in the middle of the discovery phase that warranted
a broader issue preclusion (*e.g.*, an order barring all evidence of the Donnerts'
damages). The remedy was further limited to document preclusion because
the magistrate judge repeatedly re-affirmed that ruling, Feld subsequently
voluntarily moved for sanctions and specifically requested issue preclusion,
and the magistrate judge steadfastly declined to award additional sanctions,
such as the requested issue preclusion. Feld never challenged any of those
rulings as prescribed by Fed. R. Civ. Proc. 72. Rather, while the matter was
still pending before the magistrate judge, Feld moved *in limine* for issue
preclusion, a motion that it had already lost several times before the magistrate
judge. The District Court, focusing on very narrow portions of the prior
discovery hearings, wrongly concluded that the magistrate judge had already
ordered issue preclusion for any evidence related to the Donnerts' loss of some
$121,860 of horse maintenance and feed expenses. This was error.

As to the appeal, the linchpin to this case is that the contracts are ambiguous. Although the contracts recognize Feld's power to control the show order, those same documents contain a shared-safety clause obligating Feld to "work with" the Donnerts on safety issues. Not only is the shared-safety clause itself ambiguous, but so is the conflict between the power to control show order and the obligation to "work with" the Donnerts. This ambiguity was properly submitted to the jury for their determination whether Feld had, in fact, "worked with" the Donnerts. This is an express obligation contained within the very document drafted by Feld. Because of this ambiguity, the jury properly found that Feld wrongfully terminated the Donnerts.

Feld also argues at length regarding the implied duty of good faith and fair dealing. In this case, the shared-safety clause was an express obligation contained within the very contracts drafted by Feld. The jury was free to find on its face that Feld failed to "work with" the Donnerts. Even if necessary to reach the issue, it is amply clear that Virginia does recognize an implied duty of good faith and fair dealing.

## ARGUMENT OF CROSS-APPEAL

## I. THE DISTRICT COURT ERRED WHEN IT DISMISSED THE DONNERTS' CAUSE OF ACTION BASED ON THE FLORIDA STATUTE GOVERNING RETALIATORY PERSONNEL ACTIONS

The standard of review is *de novo* when this Court reviews the grant of a Rule 12 (b) (6) motion to dismiss for failure to state a claim.  *Cioca v. Rumsfeld*, 720 F.3d 505, 508 (4th Cir. 2013).

The Donnerts sued to recover under Florida's statute governing retaliatory actions. J.A. 41. The Florida statute circumscribes "retaliatory personnel action."  A "retaliatory personnel action" is the "discharge" by an "employer" of an "employee."  Fla. Stat. § 448.101 (Reproduction 48).  A covered "employer" means "any" private company that employs 10 or more persons.  *Id*. A covered "employee" performs services "under the control and direction of an employer for wages ...."  *Id*. The statute prohibits employers from taking "any" retaliatory personnel action against an employee because the employee "objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation."  *Id*. § 448.102 (3) (Reproduction 49).  The statute authorizes a private right of action.  *Id*. § 448.103 (1) (a) (Reproduction 49).  Available remedies include reinstatement, back wages, and counsel fees.  *Id*. § 448.103 (2) & 448.104 (Reproduction 49-50).

In this case, the pertinent violation of law is the OSHA whistleblower provisions.  OSHA prohibits employers from "discharg[ing] or in any way discriminat[ing] against any employee because such employee has filed any

complaint ... related to this Act ...." 29 U.S.C. § 660 (c) (1) (Reproduction 20).
This protection has been extended to any employee exercising "any right
afforded by the Act." 29 C.F.R. § 1977.3 (Reproduction 52). The protection
applies if the "protected activity was a substantial reason" for the discharge. 29
C.F.R. § 1977.6 (b) (Reproduction 53-54). The protection applies to "lodging
complaints about occupational safety and health matters with their employers
... if made in good faith." 29 C.F.R. § 1977.9 (c) (Reproduction 54). Although
the panoply of remedies available under OSHA does not happen to include a
private right of action, 29 U.S.C. § 660 (c) (2), it is still a "retaliatory personnel
action" that violates OSHA for Feld to terminate the Donnerts for complaining
about safety issues in good faith.

Because the Florida statute applies to "any" employer, it was the law of
Florida that would govern when Feld wrongfully terminated the Donnerts.
The District Court concluded otherwise on the basis of the choice-of-law
clauses specifying Virginia law. J.A. 80-81, 114-115.

The parties may adopt a choice-of-law clause unless

application of the law of the chosen state would be contrary to a
fundamental policy of a state which has a materially greater interest than
the chosen state in the determination of the particular issue and which,
under the rule of § 188, would be the state of the applicable law in the
absence of an effective choice of law by the parties.

*Restatement (Second) of Conflict of Laws* § 187 (2) (b) (1971).  Under § 188, choice of law is derived from "the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principle stated in § 6."  *Id*. § 188 (1).

Under these facts, Florida law should prevail.  But for the choice-of-law clause, Florida is certainly the local law with the most significant relationship to the transaction: all of the pertinent events as well as retaliatory personnel action occurred in Florida, and the plaintiffs reside there.  J.A. 160.  Further, Florida has a fundamental policy that retaliatory personnel actions should be subject to a private right of action, thereby supplementing the reach of OSHA and other statutes.  Moreover, because this conduct occurred in Florida, and left the Donnerts as Florida residents near-bankrupt, Florida also has a materially-greater interest than Virginia in the outcome of this issue.  In fact, Florida's interest is so great that the Florida statute allowed the Donnerts to pursue venue in Florida, Fla. Stat. § 448.103 (1) (b) (Reproduction 49), regardless of the choice-of-forum clauses in the contracts.

The District Court relied upon *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 628 (4th Cir. 1999).  In *Hitachi*, a choice-of-law clause was allowed to avoid a common-law fraudulent inducement claim.  The case did not pose the public policy question that is raised when a statute is avoided.

There are very practical problems associated with the District Court's ruling. In this case, a mobile employer who plays throughout the country can violate important local laws with impunity. This is lawlessness that will undercut the ability of legislatures to determine their destinies and exercise police powers.

## II. THE DISTRICT COURT ERRED WHEN IT ENTERED AN ORDER OF ISSUE PRECLUSION IN THE MISTAKEN BELIEF THAT THE MAGISTRATE JUDGE HAD ALREADY ORDERED IT

The standard of review is *de novo.* The discovery motion was referred to the magistrate as a "pretrial matter" under 28 U.S.C. § 636 (b) (1) (A). The District Court was empowered to "reconsider" such matters "where it has been shown that the magistrate's order is clearly erroneous or contrary to law." *Id. See also In re: Application of the United States of Am.*, 707 F.3d 283, 289 (4th Cir. 2013) (review of magistrate's actions under 28 U.S.C. § 636 (b) (3) is *de novo*); *In re: Merry-Go-Round Enters., Inc.*, 400 F.3d 219, 224 (4th Cir. 2005) (the District Court reviews a bankruptcy court's findings of fact for "clear error," conclusions of law are reviewed *de novo*, and the same standards apply to the appellate court when reviewing the bankruptcy court's actions).

The Donnerts are not challenging the propriety of the magistrate judge's document-preclusion order. They did not have documents of that nature, J.A. 143, so there was no need to file objections to the order, J.A. 102, under Fed.

- 26 -

R. Civ. Proc. 72 (a).  Similarly, the order was apparently satisfactory to Feld, which also declined to file objections, until it later moved for sanctions, seeking issue preclusion for the first time.

Instead, the Donnerts do challenge the District Court's re-interpretation of that order as an issue-preclusion order.  Because there was never any "timely objections," Fed. R. Civ. Proc. 72 (a), there was nothing for the District Court to "reconsider" under 28 U.S.C. § 636 (b) (1) (A).  And certainly, there was no basis for finding clear error under a *de novo* review, nor did the District Court claim any such error.

Under the unusual facts of this case, the issue is a narrow one: Did the District Court improperly "reconsider" the magistrate judge's document-preclusion order by expanding it to an issue-preclusion order?  Because it did so, this was an error of law.

The magistrate judge's discovery ruling called for nothing more than document preclusion of any documents not produced by a specified deadline. This is readily apparent from:

- The only remedy sought by Feld was to determine if there were any documents.  J.A. 93.

- The magistrate judge had precisely the same objective, and even remarked that he did not expect there would be many documents. J.A. 97.

- The magistrate judge teed up his ruling by stating that " there comes a time that which *documents* have to be produced or else you can't rely on them." J.A. 99 (emphasis added).

- The magistrate judge then went on to say that the Donnerts "are not going to be able to claim damages for any out-of-pocket expenses *for a veterinary bill or anything else*" that was not produced by the deadline. J.A. 99 (emphasis added). By using the phrase "for a veterinary bill or anything else," the magistrate judge was precluding documentary evidence only.

- Feld was dissatisfied with document preclusion and subsequently filed a 2nd motion for sanctions expressly seeking issue preclusion. J.A. 7.

- On multiple occasions, the magistrate judge re-affirmed that the discovery ruling was limited to document preclusion. J.A. 138 ("not going to be able to offer documentary evidence of any such expenses"); J.A. 169 (documents could not be introduced if not timely produced)

- Feld's counsel acknowledged that the original discovery ruling was limited to document preclusion. J.A. 138.

- The magistrate judge on multiple occasions commented that he was continuing to consider broader sanctions, including issue preclusion. J.A. 157, 262, 269.

- Feld renewed its motion for issue preclusion precisely because the magistrate judge has not ruled on it. J.A. 12, 254.

- As recently as a week before trial, the magistrate judge declined to expand the discovery ruling to include issue preclusion as requested by Feld. J.A. 262, 269.

Under these facts, the magistrate judge's ruling was limited to document

preclusion, and was never expanded to issue preclusion. It was an error of law

for the District Court to interpret the document-preclusion order expansively. The Donnerts were harmed by this ruling because they were precluded from introducing non-documentary evidence, including both fact and expert testimony, to establish the fair and reasonable charges of $121,680 for the maintenance and feed of their horses.

It is important to note that the reason for this outcome is that Feld failed to follow procedure. If Feld was confused, it should have gone back to the magistrate judge (just as it did multiple times). If Feld did not like the magistrate judge's refusal to expand the ruling to include issue preclusion, then it should have filed written objections under Fed. R. Civ. Proc. 72 (a), and subjected its argument to the restrictive standard of review under 28 U.S.C. § 636 (b) (1) (A). Instead, Feld forum shopped, returned to the District Court, and effectively asked for the very same remedy on the very same issue that the magistrate judge had considered and denied on multiple occasions.

## ARGUMENT OF APPEAL

### III. THE TRIAL COURT PROPERLY DETERMINED THAT THERE WAS A JURY ISSUE WHETHER FELD LACKED CAUSE TO TERMINATE THE DONNERTS

In its statement of the standard of review, Feld fails to acknowledge the most salient fact.  When reviewing a Rule 50 motion[1], this Court may reverse the denial only if the court "finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the non-moving party." *Dotson v. Pfizer, Inc.*, 558 F.3d 284, 292 (4th Cir. 2009).  The trial court may not grant such a motion "unless it concludes, after consideration of the record as a whole in the light most favorable to the non-movant, that the evidence presented supports only one reasonable verdict, in favor of the moving party." *Id*.

Viewed in the light most favorable to the Donnerts, the employment contract and lease did not give Feld a clear right to terminate the Donnerts for failing to perform under the new show order.  Rather, these contracts were ambiguous and presented legitimate issues for the jury to interpret. A question of fact for the jury exists when the contract's terms are ambiguous. *Winn v. Aleda Construction Co.*, 227 Va. 304, 307, 315 S.E.2d 195, 194-95 (1984).  Ambiguity means "the condition of admitting of two or more meanings, of being understood in more than one way, or of referring to two or more things at the same time." *Fried v. Smith*, 244 Va. 355, 357, 421 S.E.2d 437, 438

---

[1] Feld purports to appeal the denial of its motion for summary judgment.  This is simply not appealable. *Mackey v. Shalala*, 360 F.3d 463, 469 (4th Cir. 2004) ("The order denying her motion for summary judgment is not an appealable order.").

(1992). Doubts about the meaning of a word or phrase are resolved against the

drafting party. *Winn v. Aleda Construction Co.*, 227 Va. 304, 307, 315 S.E.2d

195, 194-95 (1984). The District Court berated Feld for the ambiguity of its

contracts. J.A. 80 ("You need to write better contracts in the future, be clear

about whose duty is what.");  J.A. 83 ("you need to make these contracts

clearer.  You need to be clear about obligations ... about whether you need to

have wild animals going before or after the horses.").

> In this case, the contracts contained a shared-safety clause providing that
>
> safety is of paramount concern to [employer] as it relates to animals, the
> public, and [employer's] animal care and other staff, and [employees]
> will take all necessary steps to ensure such level of safety ....  [Employer]
> agrees to work with [employees] to facilitate compliance.

J.A. 641, § 7 (c).  This clause could, as the trial court determined, be

reasonably interpreted to require Feld to "work with" the Donnerts to maintain

safety as a "paramount concern."  J.A. 111 (the shared-duty clause "provides

that defendant must 'work with' plaintiffs to facilitate compliance with the

safety requirements ..."); J.A. 687.

Because the evidence must be reviewed in the light most favorable to the

Donnerts, it matters not whether the shared-safety clause could be reasonably

interpreted in other ways.  For example, Feld itself originally contended that

the shared-safety clause meant that

the circus obviously takes very seriously the issue of animal welfare and its productions and its performances, and **the circus will work with acts to make [*sic*] that they are complying with the FDA [*sic*] requirements** and all the other regulations that apply to a circus.

J.A. 53. Given that "FDA requirements" are not relevant and this is an apparent transcription error, even Feld acknowledged early on that it had a responsibility to "work with" the Donnerts to ensure compliance with "[safety] requirements." In its brief, Feld now takes the strained position that the shared-safety clause embedded in § 7 (c) of the lease derives its meaning not from § 7 (c), the predecessor § 7 (b), or the successor § 7 (d), but skipped a sub-section and derived its meaning from § 7 (a)[2]. Feld was certainly free to argue this interpretation to the jury, but the jury was free to determine otherwise.

The most that the Feld can claim is that there is a conflict between its power to control the show order and its responsibility to promote safety, thereby precluding them from having a "clear contract right." *Stoney Glen, LLC v. Southern Bank & Trust Co.*, 2013 U.S. Dist. Lexis 63763, *15 (E.D. Va. May 2, 2013). Under the contract, discretion was not "vested solely" in the defendant, *Virginia*

---

[2] Even under Feld's strained interpretation, there was still an issue for the jury to interpret the contracts. Under § 7 (a), the Donnerts agreed to "comply with all [Feld's] current policies and any new policies or procedures" governing "training ... and treatment of all animals ...." J.A. 640. Rehearsals during winter quarters were precisely this kind of "training…and treatment" for which even Feld now admits it had to "work with" the Donnerts. For evidence that the rehearsals were "training," *see* J.A. 335, 398, 419.

*Vermiculite, Ltd. v. W.R. Grace & Co.*, 156 F.3d 535, 542 (4th Cir. 1998), so any contractual rights had not accrued.  This is not a situation where the defendant could merely "flip a coin" to decide what it wanted to do under the contract. *Stoney Glen*, *17.  As a result, there are no "valid and binding rights," *Ward's Equip., Inc. v. New Holland N. Am., Inc.*, 254 Va. 379, 493 S.E.2d 516 (1997), but only a contractual conflict in express terms for the jury to resolve.

Not only was the shared-duty clause itself ambiguous, but the inherent conflict between the shared-duty clause and Feld's power to control the show order created further ambiguity.  When the show order created safety issues, just exactly how was Feld to "work with" the Donnerts?  This is precisely the sort of conflict that the jury should resolve.

Once the ambiguity of the contract is revealed, the remainder of Feld's argument collapses.  The jury was free to find that the Donnerts did not breach the contract, but were actively negotiating to procure what was promised to them, which was an employer that acted as if "safety" was "paramount" to it, and would "work with" the Donnerts to achieve that level of safety.  The jury was also free to find, as it did, that Feld had breached the contract by failing to "work with" the Donnerts.

Thus, the jury was free to find that the new show order posed a safety risk to animals and humans.  J.A. 360, 445, 654, 687.  The Donnerts properly

- 33 -

raised legitimate safety concerns to Feld's management.  J.A. 460, 463-64, 654.

Feld was unable to even admit that there were safety issues. J.A. 505-506.

Feld's sole remedial effort was not successful, and Cornbread was injured as a

result.  J.A. 415, 417, 460, 547, 654, 687.  The Donnerts renewed their safety

concerns, this time in writing.  J.A. 654.  Rather than trying to "work with" the

Donnerts to find a solution to a safety issue, Feld doubled down and proposed

options not contained in the contract and that would have deprived the

Donnerts of the benefit of their bargain (*i.e.*, a job).  J.A. 359, 423, 460, 467,

620-646.  Feld refused to negotiate on the solutions proposed by the Donnerts.

J.A. 464, 511. The jury could find from the evidence that the Donnerts had not

refused to perform, J.A. 439, and that the parties were still working together to

resolve the issue, J.A. 358, 541, 561. Feld precipitously terminated the

Donnerts without investigating the merits of the safety concerns, issuing a

written warning, consulting with animal professionals, or otherwise trying to

"work with" the Donnerts to address the known safety issues.  J.A. 516-17,

520, 549.  Feld was so unwilling to "work with" the Donnerts that it used the

artifice of the probationary clause so it need not show cause, J.A. 568-69, then

later admitted once sued that probation was not available to it,  J.A. 569,

rather than evaluate whether there really was a safety problem.  If Feld was

truly trying to "work with" the Donnerts, the jury could have found that –

surely – Feld would accurately state the reason for termination.  J.A. 568-69. *See Restatement (Second) of Contracts* § 205, comment e (1981) (lack of good faith includes "asserting an interpretation contrary to one's own understanding").

When the defendant drafted contracts indicating that safety was its "paramount concern," and asking the Donnerts to affirm it, the jury could conclude that the defendant did, indeed, make that very representation. *Restatement (Second) of Contracts* § 205, comment a (1981) ("Good faith performance or enforcement of the contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party ...."). This point was established in *Tymshare, Inc. v. Covell,* 727 F.2d 1145 (D.C. Cir. 1984).  In a case applying Virginia law, Judge (now Justice) Scalia determined that a party can act without good faith when it is "not acting for any of the purposes implicitly envisioned by the contract."  Id. at 1154.  *See also Pennsylvania State Shopping Plazas, Inc. v. Olive*, 202 Va. 862, 120 S.E.2d 372 (1962) (purchaser tried to avoid contractual obligations by not making a bona fide effort to comply with the contract).  In this case, the jury could determine that the defendant improperly decided that it just wanted to get rid of the Donnerts because it was "tired of" them.

There were other ways for the jury to reach this same outcome. The jury could have found that Feld commited a material breach, thereby excusing the Donnerts from performing their contractual obligations.  *Horton v. Horton*, 254

Va. 111, 115-16, 487 S.E.2d 200, 204 (1997). In other words, the jury could find that Feld breached first by failing to solve the problem, causing Cronbread's injury, and forcing the Donnerts to draw a line in the sand. The evidence is that Feld was not "working with" the Donnerts long before the Donnerts declined Feld's 3 options.

Further, the jury reasonably could have interpreted the contract to mean that Feld had breached it by failing to "work with" the Donnerts.  Under Virginia law, Feld could not take action that prevented the Donnerts from performing the contract. *Whitt v. Godwin*, 205 Va. 797, 800, 139 S.E.2d 841, 844 (1965) (If one of the contracting parties prevents the other party from performing under a contract, he cannot prevail because he has brought about that nonperformance.).  Under the contract, the Donnerts were obligated to maintain "paramount" animal safety.  J.A. 641, § 7 (c).  *See also* J.A. 625, § 14 (h) (the Donnerts were obligated to maintain "utmost ... safety ... of the animals").  Feld forced the Hobson's choice that the Donnerts either perform the new show order unsafely, breach their safety duties, and thereby expose animals and humans to contractually-prohibited danger; or refuse to perform the new show order and expose themselves to a failure to follow directions. The jury could reasonably find that Feld had taken action that prevented the Donnerts from performing the contract as drafted.

## IV.  THE DISTRICT COURT PROPERLY FOUND THAT THE JURY COULD FIND A BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

Feld next challenges the issue of implied duty of good faith and fair dealing[3]. The short answer to this issue is that the shared-safety clause, obligating Feld to "work with" the Donnerts on safety issues, was an express contractual term, and the jury was free to interpret what it meant to "work with" the Donnerts.  They were free to interpret that term as consistent with a duty of good faith and fair dealing, or in any other reasonable manner[4]. There was nothing "implied" about this express contractual term, only ambiguity that

---

[3] Feld purports to challenge the jury instruction related to the duty of good faith and fair dealing.  Doc. 30, at 27.  However, Feld has failed to identify a standard for reviewing jury instructions, *id.*, nor has it identified a transcript corroborating that it objected to this jury instruction, *see* J.A. 606-10.

Feld also argues that it was denied notice that an implied duty of good faith was part of the case.  Doc. 30, at 27-29.  Feld never argued that it lacked notice, J.A. 581 (representing that the implied duty of good faith had been resolved on motion to dismiss, but omitting reference to lack of notice), so the issue is waived and was tried by consent.  A party must object and can only appeal for those grounds specifically stated below.  *United States v. Zayyad*, 741 F.3d 452, 459 (4th Cir. 2014). Further, contrary to Feld's representation, the trial court had not ruled on the issue, J.A. 77, 111, 587, and the issue was frequently raised throughout the case.

[4] Oddly, the jury instruction benefited Feld.  It is possible that the jury equated the shared-safety clause with the instruction regarding the duty of good faith and fair dealing, J.A. 616, thereby setting a "floor" below which their interpretation of the shared-safety clause would not be adverse to Feld.  Thus, Feld was not harmed by any erroneous instruction on an implied duty.

the jury needed to interpret. As such, any error regarding an "implied" duty of good faith is at most harmless because it was subsumed by the express shared-safety clause.

If necessary to reach the merits, Virginia certainly does recognize an implied duty of good faith. It is worth noting that the Fourth Circuit has made it clear that Virginia does, in fact, recognize the implied duty of good faith and fair dealing. *Vermiculite, Ltd. v. W.R. Grace & Co.*, 156 F.3d 535, 542 (4th Cir. 1998).

The true purpose of Feld's argument regarding an implied duty of good faith is that it wants to find another way to get around the ambiguity of the contracts. This was discussed *supra*. Despite Feld's efforts, there is no re-writing of an unambiguous contract via an implied duty of good faith, only the inevitable by-product that the jury must determine the meaning of the ambiguity.

## V. THE DISTRICT COURT PROPERLY INSTRUCTED THE JURY THAT FELD COULD NOT PREVENT US FROM PERFORMING THE CONTRACT

Feld also challenges the jury instruction that Virginia recognizes an implied condition that one party cannot prevent performance by the other. Although the current challenge is that the jury instruction was an incorrect statement of the law, Doc. 30, at 43, that was not Feld's position at trial. At

- 38 -

trial, Feld argued only that the instruction was contrary to the evidence, J.A. 610, thus, failing to preserve the issue.

Once again, this is yet another example of Feld trying to evade the consequences of its ambiguous contract. As already illustrated *supra*, because the contract was ambiguous, it was properly left to the jury to decide whether Feld served up a Hobson's choice, thereby preordaining the Donnerts' inability to perform compliantly. By determining whether Feld had failed to "work with" the Donnerts, the jury was effectively addressing whether Feld had prevented performance from the Donnerts. In other words, if the jury found that Feld had prevented performance by the Donnerts, it could certainly determine that it had failed to "work with" the Donnerts and were operating outside of any purported contractual rights.

Finally, the jury instructions gave Feld exactly what it wanted. At Feld's request, the jury was told that there was no breach if Feld had exercised a contractual right. J.A. 617. Thus, Feld was free to argue that it was not preventing performance because it was exercising a contractual right, and the jury resolved that argument when it interpreted the ambiguity of the contract.

## VI. THE DISTRICT COURT PROPERLY FOUND THAT THE PLAINTIFFS PROVED THEIR DAMAGES

Feld contends that it properly raised the issue that the Donnerts had failed to prove their damages. Doc. 30, at 46. To support that argument, they rely upon their preliminary motion at the close of the Donnerts' case. *Id.* (*citing* J.A. 472). The motion was supposed to have been raised and argued later that day, J.A. 472, but Feld failed to do so. That motion was not renewed or articulated at the close of the case, J.A. 574-604, nor does it appear that the District Court actually ruled on the issue precisely because it was never renewed,[5] J.A. 472, 574-604. As such, Feld failed to preserve the point.

As to the merits, the Donnerts had the burden to prove their damages. They were not required to prove the exact amount of their damages, but only sufficient facts and circumstances to permit the jury to make a reasonable estimate. Plaintiff is not required to prove the exact amount of damages. *Clark v. Scott*, 258 Va. 296, 303, 520 S.E.2d 366, 370 (1999). Plaintiff need only provide a reasonable basis for computing damages. *Barnes v. Graham Va. Quarries, Inc.*, 204 Va. 414, 418, 132 S.E.2d 395, 397 (1963).The plaintiff's proof must establish a reasonable estimate of the amount of damages. Uncertainty in the amount of damages is not fatal; the jury is allowed to

---

[5] If Feld had renewed its motion, the Donnerts would have argued that Feld had waived the issue by failing to make the point when asked about damage calculations in their corporate representative deposition. J.A. 241-43. This is how and why Feld lost the exact same issue when raised on Feld's motion for summary judgment.

speculate to some extent. *Kiser v. Amalgamated Clothing Workers*, 169 Va. 574, 588, 194 S.E. 727, 732-33 (1938). In this case, plaintiffs established that they were ready, willing, and able to perform during the remaining 96 weeks of their contract with Feld. J.A. 432-36, 468. They further identified those times when they had been able to secure alternative income. J.A. 432-36, 468. There was certainly no evidence that Feld was closed for normal business hours, and the jury could reasonably infer that regular business operations were observed. This was a more-than-reasonable basis for the jury to determine damages, and Feld even acknowledges that the jury awarded full credit for alternative work performed in mitigation. Doc. 30, at 47 n. 7.

Felds's argument ultimately attempts to convert its burden to prove mitigation of damages into our responsibility to prove a negative (*i.e.*, when would the Donnerts have *not* been eligible to work). *Forbes v. Rapp*, 269 Va. 374, 380, 611 S.E.2d 592, 595-96 (2005) (defendant bears the burden of proving a failure to mitigate damages). If Feld wanted to quibble whether any Feld performances were canceled during the following 22 months, then it should have responded to discovery with the evidence uniquely in its possession on that topic and made its position known when requested via its corporate representative deposition. J.A. 241-43.

## VII.  THE DISTRICT COURT PROPERLY DENIED FELD'S MOTION FOR NEW TRIAL BASED ON ALLEGEDLY PREJUDICIAL REMARKS DURING TRIAL

Finally, Feld contends that it was prejudiced because of certain comments during trial.  As to David Donnert's references to injuries to their horse, Karolyi, on each occasion when Feld objected, they received the remedy they requested.  On at least one occasion, they failed to object, thereby failing to preserve the issue.  David Donnert's comments were relevant because this prior injury made it all the more prudent that the Donnerts insist upon appropriate safe practices.

Finally, Feld takes issue with references by name to a Surgi-Care medical report related to Cornbread 's treatment.  Feld acknowledges that the "contents" of that report were inadmissible on hearsay grounds.  Doc. 30, at 49 (*citing* J.A. 310-16).  In contrast, there was never a preliminary ruling precluding factual references to the existence of that document, J.A. 319 (District Court instructed counsel not to mention hearsay in the Surgi-Care report), nor would the fact of a document alone raise a hearsay objection.  The "contents" of the document were never revealed.  The existence of the document and whether Feld investigated it were relevant to Feld's efforts to "work with" the Donnerts.  Moreover, Feld wants it both ways: the report is

prominently referenced in Plaintiffs' Exhibit 57, J.A. 654, something to which Feld never objected.

In both instances, Feld objected infrequently to these references, yet received whatever remedy it requested. The trial judge heard the same argument and sat through the trial and did not believe that these comments resulted in a miscarriage of justice, nor has Feld's speculation shown otherwise.

## CONCLUSION

**Wherefore,** the Donnerts respectfully request that the Court

- Grant the Donnerts' cross-appeal.

- Remand the case for further proceedings to determine the Donnerts' direct contractual damages as well as recovery under Florida Statute §448.102.

- Deny Feld's appeal.

Respectfully submitted:

/s/ R. Wayne Pierce
R. Wayne Pierce
THE PIERCE LAW FIRM, LLC

133 Defense Highway, Suite 106
Annapolis, MD 21401
Phone:  (410) 573-9955
Fax:  (410) 573-9956
Email:  wpierce@adventurelaw.com


**Attorney for Cross-Appellants**
**Robert and David Donnert**

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 4-1098 (L)    Caption: Robert & David Donnert v. Feld Entertainment, Inc.

### CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

   This brief complies with the  type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [✓]    this brief contains _____ 8188 _____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [ ]    this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger.  A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [✓]    this brief has been prepared in a proportionally spaced typeface using
   Microsoft Word 1997-2003 _____ [*identify word processing program*] in
   Calisto MT 14 pts _____ [*identify font size and type style*]; or

   [ ]    this brief has been prepared in a monospaced typeface using
   _____ [*identify word processing program*] in
   _____ [*identify font size and type style*].

(s) R Wayne Pierce _____

Attorney for Robert and David Donnert _____

Dated: 07/24/14 _____

04/13/2012
SCC

# CERTIFICATIONS

On July 24, 2014, the Brief of Cross-Appellants, and Reproductions of Statues, Rules & Regulations were served electronically by the Court's CM/ECF system on all counsel of record, each of whom is a filing user. Pursuant to 4th Cir. L.A.R. 31 (d), the original and 8 hard copies of those documents were mailed to the clerk.

/s/ R. Wayne Pierce
R Wayne Pierce